IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ROBERT WOJTECKI II,

                          Plaintiff,

        v.

                                          Civil No. 09-584-ST

COMMISSIONER OF SOCIAL                    FINDINGS AND RECOMMENDATION
SECURITY,

                          Defendant.
_____

STEWART, Magistrate Judge:

## **INTRODUCTION**

        Plaintiff, Robert Wojtecki II, filed this action against defendant, Commissioner of the

Social Security Administration, seeking review of the Commissioner's decision denying his

1 - FINDINGS AND RECOMMENDATION

request for Disability Insurance Benefits ("DIB") based on post-traumatic stress disorder

("PTSD), degenerative joint disease, and pinched nerves in the back and groin.  On July 15,

2010, this court issued Findings and Recommendation to reverse the Commissioner's decision

(docket # 22).  On August 10, 2010, Judge Michael W. Mosman adopted the Findings and

Recommendation (docket # 24) and entered a Judgment on August 13, 2010, reversing and

remanding the Commissioner's decision for a determination of benefits pursuant to sentence four

of 42 USC § 405(g) (docket # 25).

On November 9, 2010, Wojtecki's attorneys filed an Application for Fees Pursuant to the

Equal Access to Justice Act ("EAJA") in the sum of $7,050.00 (docket # 26).  Based on the

Stipulation by the Commissioner (docket # 27), the court granted that application on

November 10, 2010 (docket # 29).

On March 14, 2011, Wojtecki's attorneys filed an Unopposed Motion for Attorneys Fees

Pursuant to 42 USC § 406(b) (docket # 30), seeking fees in the sum of $20,733.00 (25% of the

retroactive benefits awarded).  The Commissioner filed no response to this motion.[1]  For the

reasons set forth below, that motion should be granted.

## LEGAL STANDARD

In Social Security cases, attorney fees may be awarded under both the EAJA and 42 USC

§ 406(b).  Congress enacted the EAJA in 1980 to permit recovery of attorney fees in those cases

where "the Government's position in the litigation was not 'substantially justified.'"  *Gisbrecht*,

*v. Barnhart*, 535 US 789, 796 (2002), citing 28 USC § 2412(d)(1)(A).  EAJA fees are determined

by the time spent multiplied by a capped hourly rate.  *Id*, citing 28 USC § 2412(d)(2)(A).  In

---

[1]  The Commissioner has no reason to oppose an attorney fee request under § 406(b) since any fee awarded will be paid by the claimant from the benefits awarded.

contrast, pursuant to 42 USC § 406(b)(1)(A), "the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." Such fee awards are paid from a claimant's retroactive benefits award. *Id*. In attorney fee motions under 42 USC § 406(b), the real party in interest is the attorney, not the claimant. *Id* at 798 n6. An attorney receiving a § 406(b) fee award may not seek any other compensation from a claimant. *Id* at 796. Accordingly, when a court approves both an EAJA fee and a § 406(b) fee, the claimant's attorney must refund to the claimant the smaller amount of the two awards. *Id*.

The § 406(b) fee is not determined by the lodestar method which governs fee-shifting disputes. *Id* at 800-01. Instead, contingency fee agreements not exceeding 25% of the claimant's retroactive benefits are enforceable under § 406(b) subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id* at 807. The claimant's attorney bears the burden to establish the reasonableness of the fee. *Id*.

The Ninth Circuit has articulated four factors derived from *Gisbrecht* that district courts should use in determining whether a reduction from the contingent fee agreement is appropriate:

1. the character of the representation, specifically, whether the representation was "substandard;"

2. the results the representative achieved;

3. any delay attributable to the attorney seeking the fee; and

4. whether the benefits obtained were "not in proportion to the time spent on the case" and raise the specter that the attorney would receive an unwarranted windfall.

*Crawford v. Astrue*, 586 F3d 1142, 1151-53 (9th Cir 2009).

3 - FINDINGS AND RECOMMENDATION

In other words, the court is empowered to exercise discretion to ensure that the claimant is protected from having to surrender retroactive disability benefits in a disproportionate payment to counsel. *Id* at 1151, citing *Gisbrecht*, 535 US at 808.

## FINDINGS

### I.    Contingency Fee Agreement

The first step in the *Gisbrecht* analysis is to examine the contingent fee agreement to determine if it is within the statutory 25% ceiling of § 406(b).  On May 18, 2009, Wojtecki signed a contingent fee agreement which provides for payment of a fee to his attorneys equal to 25% of any past-due benefits awarded.  This falls within the statutory limits, and the record reveals "no evidence of fraud or overreaching in the making of the 25% contingent-fee agreement."  *Id*.

The next step is to confirm that the requested fee does not exceed the 25% ceiling of § 406(b).  Wojtecki's attorneys have submitted a benefit award dated February 2, 2011, for past-due disability benefits from June 2005 through July 2010.  This award reveals that the Commissioner has withheld  25%, or $20,733.00, for payment of any attorney fee awarded by the court.  Thus, as estimated by Wojtecki's attorneys, the amount of retroactive benefits is at least $82,932.00.

### II.    Reasonableness Determination

#### A.    Character of the Representation

Substandard performance by a legal representative may warrant a reduction in a § 406(b) fee award. *Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151.  As an example of substandard representation, *Gisbrecht* cites *Lewis v. Sec'y of Health and Human Servs.*, 707 F2d

246 (6th Cir 1983). *Lewis* considered the counsel's poor preparation for hearings, failures to meet briefing deadlines, submissions of court documents void of legal citations, and misconduct in overbilling the claimant to amount to substandard representation. *Lewis*, 707 F2d at 248-50.

The record does not suggest that the performance by Wojtecki's attorneys was substandard. The briefs filed in this court contained a thorough and persuasive analysis of the legal errors committed by the ALJ. Thus, no reduction is warranted due to the character of the representation.

### B.    <u>Results Achieved</u>

As a result of the efforts of Wojtecki's attorneys, this case was remanded for an award of benefits. However, an award of benefits should not be viewed in isolation or always presumed to require a fee award of 25% of a claimant's retroactive benefits award.

> If obtaining benefits always supported awarding fees for the full twenty-five percent, it would make irrelevant the other *Gisbrecht* factors and render perfunctory the trial courts' assigned task of "making reasonableness determinations in a wide variety of contexts[.]"

*Dunnigan v. Astrue,* No. 07-CV-1645-AC, 2009 WL 6067058, at *12 (D Or Dec. 23, 2009), quoting *Gisbrecht*, 535 US at 808.

### C.    <u>Dilatoriness</u>

A § 406(b) fee award may be reduced for delays in the proceedings attributable to the claimant's attorney. *See Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151. This reduction is appropriate "so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court." *Gisbrecht*, 535 US at 808 (citation omitted).

Due to a heavy workload and vacation schedule, Wojtecki's attorneys sought two unopposed requests for extensions of time to file the opening brief for a total of 75 days (dockets

5 - FINDINGS AND RECOMMENDATION

# 10 & # 13) and one unopposed request of time to file the reply brief for 30 days (docket # 18). These extensions of time are not excessive and do not suggest any intent to unnecessarily delay the proceedings in order to maximize the attorney's fee award.  Thus, no deduction for delay is warranted.

**D.**    **Proportionality of Benefits Awarded to Time Spent**

A § 406(b) award may be reduced if the benefits awarded to the claimant "are not in proportion to the time spent on the case" by the claimant's attorney. *Crawford*, 586 F3d at 1151, citing *Gisbrecht*, 535 US at 808.  In that regard, the court may consider the records of time incurred by the attorney and a statement of the attorney's normal hourly fee in non-contingent matters.

According to the time records submitted in support of the request for EAJA fees (docket # 26-1), Wojtecki's three attorneys (Tim Wilborn, Betsy Stephens, and Steven Essley) expended a total of 40.7 hours in connection with this matter.  The opening brief of 20 pages and the reply brief of eight pages both addressed several alleged errors.  Based on a review of the briefs filed and issues raised, the number of total hours spent on this case is not inherently unreasonable.  In *Harden v. Comm'r*, 497 F Supp 2d 1214, 1215 (D Or 2007), Judge Mosman observed that "[t]here is some consensus among the district courts that 20-40 hours is a reasonable amount of time to spend on a Social Security case that does not present particular difficulty" (citing cases). He concluded that absent unusual circumstances or complexity, "this range provides an accurate framework for measuring whether the amount of time counsel spent is reasonable."  *Id* at 1216. *See also Gill v. Comm'r*, 07-CV-812-HU (D Or Dec. 10, 2008).  Although this case did not

present issues that were either unusual or complex, the number of hours expended, albeit at the high end of the range, is reasonable.

The award requested by Wojtecki's attorneys of $20,733.00 results in an effective hourly rate of $509.41.  Wojtecki's attorneys have no set hourly rate for representing disability claimants and have not submitted any evidence as to their normal hourly rate, if any, for non-contingent matters.  However, based on the Oregon State Bar 2007 Economic Survey, for all attorneys in Portland in private practice in the "other" category, the average hourly rate is $242.00 and the median hourly rate is $222.00, and for all Portland attorneys, the average hourly rate is $244.00 and the median hourly rate is $230.00.  Under a traditional lodestar approach, an effective hourly rate of $509.41 is more than twice that range, even considering a statement in the January 7, 2011 issue of the OSB Bulletin on page 7 cited by Wojtecki's attorneys that billing rates increased 17% in the past two years.

However, the goal under § 406(b) is not to compensate attorneys strictly for time expended as under lodestar approach, but to compensate them commensurately with the results achieved.  As Magistrate Judge Papak posited, "a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result."  *Kovacevic v. Comm'r Soc. Sec. Admin.*, No. 05-CV-512-PK, 2010 WL 1406450, at *6 (D Or March 2, 2010).  But, as he also acknowledges, this approach leaves open the questions of how to determine pre-litigation risk and how to avoid overcompensating that risk in order to avoid a windfall.  To a claim that was significantly less risky than the average claim, Magistrate Judge Papak applied a risk factor "potentially as high as 40%."  *Id* at *7.  Using $222.00 as the benchmark hourly rate, a 40% risk of winning results in a 2.5 multiplier (100/40) for an effective

7 - FINDINGS AND RECOMMENDATION

hourly of $555.00, which is slightly higher than the requested effective hourly rate requested here.

Wojtecki's attorneys argue that the risk of non-payment justifies a contingency multiplier of 2.92 based on a 34.24% chance of prevailing.[2]  Applying this multiplier to the median hourly rate of $222.00 in the 2007 OSB Economic Survey results in $648.24 per hour, higher than the effective hourly rate sought here.  However, the analysis by Wojtecki's attorneys fail to comply with directive by *Crawford* that the risk to be considered is that of the "specific case at issue" and not the lawyer's "overall success rate."  Consideration of the success rate of social security appeals in general is inappropriate, and Wojtecki's attorneys have not presented any evidence as to their pre-litigation estimate of the risk of an unfavorable outcome in this specific case.  Instead, they rely only on the Commissioner's post-litigation refusal to offer a remand to suggest that the risk of loss was significant.

As an alternative justification for this high effective hourly rate, Wojtecki's attorneys cite awards of much higher effective hourly rates in other cases in this court.  However, in all of those cases but one (*Carver v. Astrue*, No. 08-CV-6099-MO), the court simply signed the proposed order from plaintiff's counsel awarding 25% of the past due benefits without analyzing the factors required by *Crawford*.  In fact, most of those cases were decided prior to *Crawford*.  *See Harris v. Comm'r of Soc. Sec. Admin.*, No. 06-CV-1256-MA (July 15, 2009) ($768.76/hour); *Smith v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-974-MA (June 19, 2009) ($715.53/hour); *Wright v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-47-ST (Oct. 7, 2008) ($800.26/hour); *Scott v.*

---

[2]  This calculation is based on fiscal year 2009 data from the Office of Disability Programs for disability determinations allowed, dismissed, remanded and denied at various levels of review.  32 NOSSCR Social Security Forum, No. 11, p. 5 (Nov. 2010).  However, this court questions the conclusion drawn from this data by Wojtecki's attorneys.

*Comm'r of Soc. Sec. Admin.*, No. 04-CV-1671-JE (May 27, 2008) ($768.76/hour).  Wojtecki's

attorneys also neglect to mention a number of other more recent cases in which, after addressing

the *Crawford* factors, this court awarded significantly lower effective hourly rates to Tim

Wilborn.  *See Napier v. Comm'r of Soc. Sec. Admin*, No. 04-CV-340-ST ($314.34/hour);

*Pennington v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-1816-ST ($418.91/hour); *Carlson v.*

*Comm'r of Soc. Sec. Admin.*, No. 08-CV-1202-ST ($475.71/hour); *Clark v. Comm'r of Soc. Sec.*

*Admin.*, No. 07-CV-AC ($411.04/hour); *Oerding v. Comm'r of Soc. Sec. Admin.*, No. 08-CV-

633-PK (request of $414.93/hour reduced to $215.76/hour).  The problem with comparing

effective hourly rates in different cases is that the higher the benefits awarded and the fewer the

hours incurred, the higher the effective hourly rate.  In other words, the effective hourly rate is

directly related to the amount of past due benefits awarded which bears no relationship to the

amount of work necessary or reasonable to obtain that result.   Therefore, this court rejects this

sort of comparative approach.

Despite the deficiencies in the analysis presented by Wojtecki's attorneys, this court

concludes that an award of attorney fees equal to 25% of the retroactive benefits award is not

unreasonable in this case.

## **RECOMMENDATION**

Plaintiff's Unopposed Motion for Approval of Attorney Fees Pursuant to 42 USC

§ 406(b) (docket # 30) should be GRANTED in the sum of $20,733.00 (25% of the retroactive

benefits awarded) from which the EAJA fee of $7,050.00 should be subtracted.[3]

---

[3] *Jackson v. Comm'r of Soc. Sec'y*, 601 F3d 1268, 1272 (11th Cir 2010) (obligation to issue the required refund is the
attorney's; the EAJA Savings Provision does not require courts to take action with respect to the refund).

9 - FINDINGS AND RECOMMENDATION

**<u>SCHEDULING ORDER</u>**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due April 25, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 6th day of April, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge